# THE PUBLIC ADVOCATE
## FOR THE CITY OF NEW YORK
### Letitia James



## Policy and Investigative Report:
### DENIAL OF SERVICE

**New York City Schools Are Failing to Provide Mandated Supports to Children with Disabilities**

New York City Public Advocate
Letitia James

July 2017

# TABLE OF CONTENTS

**INTRODUCTION**                                                                                         4

**A PRIMER ON RELATED SERVICES**                                                                        5

**SPECIAL EDUCATION REFORM AND RELATED SERVICE AUTHORIZATIONS**          6

**IS THE DEPARTMENT OF EDUCATION MEETING ITS LEGAL OBLIGATIONS?**        10

**CONCLUSION**                                                                                          16

**ACKNOWLEDGEMENTS**                                                                                    16

**APPENDIX A**                                                                                          17

**APPENDIX B**                                                                                          18

**ENDNOTES**                                                                                            19

# Introduction

The New York City Department of Education (DOE) is the largest school district in the country, with 1.1 million students in over 1,800 schools.[i] Federal law mandates that school districts identify and evaluate every child with a disability, and create an Individualized Education Program (IEP), a document that specifies what special education services are required to assist students with disabilities) for each of these children. Related services include speech therapy, occupational therapy, physical therapy, mental health counseling services, and/or Special Education Teacher Support Services (SETSS). These services are included on most IEPs and are an essential part of a child's educational program. For many children, these services are crucial to their ability to meet developmental and educational goals.

Nearly 200,000 children (or close to 19 percent of all public school students) in New York City schools have IEPs.[ii] The DOE is required to provide all of the services and accommodations in a child's IEP. In spite of the large number of students requiring IEPs and related services, many schools (particularly those in the outer boroughs) do not have enough support staff on-site to provide services, such as speech therapists, mental health counselors, or occupational therapists. When an on-site provider is unavailable, the school gives parents a voucher – called a Related Service Authorization (RSA) – and places the burden on parents to find a provider, coordinate services, and transport their child (or children) to the provider, often multiple times a week.  Many parents are unable to find providers who have availability, let alone providers who will come to their part of the City, and so they face two unsavory options: deal with the burden of long travel times (and subsequent consequences on caring for other children and family members) to take their child to services in a different part of the City multiple times each week, or let their child go without necessary services.

The Public Advocate's Office undertook an investigation of the DOE's reliance on RSAs. The investigation focused on parts of the Bronx where the DOE's data indicated RSAs were in heavy use, and included conversations with parents and practitioners across the City.

The investigation revealed that the City's use of RSAs has resulted in children going without necessary services, falling behind academically, and failing to meet developmental milestones. The City has the capacity to hire more providers and assign them to underserved schools, and it has the legal obligation to ensure that children are receiving these services.



OFFICE OF THE NEW YORK CITY PUBLIC ADVOCATE **LETITIA JAMES**

# A Primer on Related Services

The Individuals with Disabilities Education Act ("IDEA") is the primary federal law governing special education. It defines "related services" as any services, except diagnostic and evaluative medical services, required to ensure a child with a disability is able to receive an "appropriate public education." This can include speech pathology, physical and occupational therapy, social work services, counseling, or other medical services. [iii]

According to the Department of Education's (DOE) *Family Guide to Special Education Services for School-Age Children*, related services should be "integrate[d] into the classroom" when it is appropriate. Additionally, the *Family Guide* states that "Related services should be closely coordinated with the student's teachers, other instructional personnel, and parents/guardians in support of instructional goals." Effective related services are critical for students with disabilities to meet their instructional goals.

The *Family Guide* explains how related services help students at each stage of their education:

I. **Pre-K:** "Related Services often focus intensively on supporting improved skills and behavior."
II. **Kindergarten:** "Related Services continue to focus on improving skills and behavior. To increase independence, therapists work with teachers to identify possible changes to school-related activities and the learning environment."
III. **Elementary:** "A therapist working with the student during class activities often becomes essential in helping the student meet intensified academic demands. Services continue to focus on improving foundational skills in the early elementary years. Therapists may work with the classroom teacher to adapt activities and the classroom environment to meet the needs of the student and help the student access the curriculum."
IV. **Middle School:** "For some students, the pace of progress may slow down or level off as academic demands grow; students often start to become more aware of their learning differences. Therapists help the student develop effective learning strategies while continuing to work with classroom teachers to adapt activities and the classroom environment as needed to help students successfully achieve their IEP goals. Students may benefit from learning new skills specific to pre-vocational and ADL programs."
V. **High School:** "When therapy continues to be needed, the emphasis is typically on college and career readiness. Services often focus on appropriate modification of activities and learning environment. Some students may require support to meet their IEP goals and continue to improve skills required for pre-vocational, ADL and college and career readiness programs."[iv]

When the DOE cannot provide services on-site, it gives parents a voucher – either a Related Service Authorization (RSA) or a P-3 Letter.  P-3 Letters are issued when a child has an IEP that requires Special Education Teacher Support Services (SETSS) and the school does not provide SETSS on-site.[v] For simplicity, this report refers to both RSAs and P-3 Letters as RSAs.

New York City Schools Are Failing to Provide Mandated Supports to Children with Disabilities

# Special Education Reform and Related Service Authorizations

In September 2012, the DOE implemented a citywide special education reform with an emphasis on students entering kindergarten, sixth, and ninth grades. The goals of the reform were the following:

- "To close the achievement gap between students with disabilities and their peers without disabilities";
- "To provide increased access to and participation in the general education curriculum"; and
- "To empower all schools to have greater curricular, instructional, and scheduling flexibility to meet the diverse needs of students with disabilities."[vi]

Following the reform, schools could not turn away students in need of receiving special education services. As a result, more students with disabilities are now being educated in their neighborhood schools, a practice that is generally viewed by experts as better for children, families, and communities.

However, after the rule was implemented, many schools were not provided the resources or staff to serve students appropriately. Schools are not adequately prepared to deliver related services for students with IEPs, although principals know in June how many students will be enrolled with IEPs for September and both DOE and principals could plan accordingly. Some schools do not have enough service providers assigned to the school who are DOE employees.  When this happens, if the child is to receive the services, the school must attempt to find a contractor who can come to the school to provide services.

Concurrent with the reform, the DOE modified the way that contracted providers are assigned and chosen to provide services on-site at schools. Under the current policy, a school that does not have an assigned provider employed by the DOE must exhaust a three-tiered system, confirming tier by tier that no contracted agency was able to provide school-based services.[vii]

Only after contacting three separate contract agencies – and giving each of them at least a week to respond – does DOE issue an RSA to parents and give them a list of providers.  Only then do most parents learn that they need to find a provider. The RSA requires parents to identify an independent provider to serve their child at the DOE's expense. This places the burden on parents to coordinate their child's services, a burden that the law places on the school system.  The lists of outside related service providers are not current and up-to-date. Parents often have difficulty finding a provider that is close to their home or school, and it is difficult to get reimbursement from DOE for transportation.  By the time the RSA vouchers are given to parents, most DOE contracted providers have few remaining time slots available.

The IDEA requires that schools have an IEP in effect for children at the beginning of each school year and that services be provided "as soon as possible."[viii] The current policy causes substantial delays. The Public Advocate's Office spoke with many parents with RSAs. It is not uncommon for parents to receive letters in November for services that should have been in place at the beginning of the school year.  Some parents describe much longer waits.

6



OFFICE OF THE NEW YORK CITY PUBLIC ADVOCATE **LETITIA JAMES**

The DOE has not specified how long the process for finding a contractor and, if necessary, issuing an RSA should take in order to comply with the IDEA's requirement that services be provided "as soon as possible." The only mention of when the completion of procedural steps should occur can be found in the DOE's Standard Operating Procedure Manual (SOPM), which predates the special education reform. That manual suggests a 15-day timeline from beginning to the issuance of an RSA. It is not mentioned anywhere on the DOE's website or in their *Family Guide to Special Education Services for School-Age Children*.[ix] It is also unclear whether there is any intervention by the DOE when services are not provided within a 15-day period.

> Anecdotally, we know that many children wait much longer than 15 days for services. For example, Minerva[1] lives in Queens with her eight-year-old son, who has autism. He received early intervention services before he began school. Once he started school, his IEP listed occupational therapy, physical therapy, speech therapy, and mandated a placement in an 8:1:1 classroom (a classroom with eight students, one teacher, and one paraprofessional). His IEP meetings (meetings between parents, teachers, and school officials to discuss a child's IEP) were mostly in English and the IEP was never translated into Spanish, which is Minerva's primary language. When her son's neurologist discovered that he was not receiving occupational or physical therapy, the school sent a letter that offered to have the school pay for services if Minerva could transport her son. Minerva has significant health problems and cannot take her son to providers.  Her son is not receiving these much-needed services.

One cause of the delay appears to be the City's Special Education Student Information System (SESIS), a computer system that has been plagued by operational problems.  According to special education advocates and service providers throughout the city, the SESIS data management system that is used to transmit requests for service is not functioning properly.[x] Referrals are often stuck in the system and not completed. This prevents providers from being assigned to students and the services from being delivered. It also prevents the final step of the DOE issuing a voucher for an independent provider.

[1] Named changed to protect identify of the child and family.

New York City Schools Are Failing to Provide Mandated Supports to Children with Disabilities

## Special Education Referral Process





OFFICE OF THE NEW YORK CITY PUBLIC ADVOCATE **LETITIA JAMES**

### Ongoing Issues

- There is a discrepancy in the effectiveness of RSAs from school district to school district. The percentage of students able to find a provider is lower in poor school districts.  This may be because parents with fewer resources struggle to coordinate travel, childcare, and work responsibilities.

- Due to a lack of resources and providers in poorer school districts, children and families who are in shelter are especially impacted.

- RSAs are DOE's  last resort to provide related services and are not issued until all other avenues have been exhausted. That said, parents do not receive them  until months into the school year and many times longer.

# Is the Department of Education Meeting Its Legal Obligations?

The DOE must ensure that New York City public schools meet the requirements of the IDEA.[xi] The DOE must also provide students with disabilities with equal access to education under Title II of the Americans with Disabilities Act and the New York City Human Rights Law.[xii] This law mandates that students with disabilities cannot be denied the benefits of, or be excluded from, participation in educational programs and services.

Related services are provided to support and advance the educational achievement of students with disabilities. These related services must comply with many of the same legal requirements as the classroom instruction that students with disabilities receive. For example, related services must be delivered in the least restrictive environment.[xiii]

The Public Advocate's investigation found that the DOE has failed to fulfill its legal obligations to thousands of students with disabilities across the City. The problem is particularly acute in School Districts 8, 9, 10, and 11, located in Bronx. The DOE has shifted its responsibility to parents - holding them accountable for finding providers for related services that are indicated on their child's IEP, coordinating care and services.

When the DOE issues an RSA to a parent, the school also sends a list of hundreds of DOE contracted providers.[xiv] Even with this list, many parents struggle to find a provider that is available. If parents are able to find a provider, they still may need to travel to the provider's office for the related services that are provided on-site to most students with disabilities. Parents must transport their child to and from these services week after week adding expense and time to an already busy week of school and work. Many parents are unaware that they can seek reimbursement for the cost of transportation. Those parents who do seek reimbursement report onerous record keeping and lengthy delays before receiving reimbursement for transportation. Low-income families often do not have the ability to pay transportation costs up-front and are unable to wait many months for reimbursement. This DOE policy abrogates its responsibility and causes hundreds of children to go without services rather than ensure that these services are provided at school.

For example, one parent with whom the Public Advocate's Office spoke, Yadirah[2], described her failed attempts to find a provider for her son. Yadirah lives with her 18-year-old son in Bushwick. They immigrated to the United States when her son was in fifth grade. Her son has ADHD and a speech impairment. His IEP initially listed speech therapy, a paraprofessional, and counseling. In ninth grade, the school stopped providing the services on-site. Yadirah received an RSA, but was unable to find a bi-lingual provider that worked close to their home. With her full time work schedule, she was unable to find a way to bring her son to services while also working. Yadirah asked the school to once again provide the services on-site, but instead they removed the related services from her son's IEP.

---

[2] Named changed to protect identify of the child and family.

The Public Advocate's Office also spoke with providers about what challenges parents and providers face in coordinating the provision of related services.  Jennifer[3] is an independent speech therapist who provides services in Queens. She does not offer multilingual services for clients. She has observed that many parents are unable to reach providers on the independent provider list, which deters them from finding providers. She has also noticed that many parents whose children are receiving multiple services struggle to schedule all of the needed services. For RSA voucher clients, she can only provide services after school so scheduling is more difficult. She says that the Department of Education's reimbursement rates for RSAs are extremely low, but she can make 20-25% more by providing Early Intervention services (to infants and toddlers).  As a provider, she has also had many issues with administrators uploading contracts in a timely manner, so that it takes months for her to collect payment. Many providers do not want to take RSAs as a result.

Many parents report that finding a provider who has availability and who can travel to the Bronx is nearly impossible. The Public Advocate's Office conducted a survey of providers on the lists provided by the DOE to determine how many of the providers were willing to provide services in the Bronx. The DOE provides two lists for most related services – a shorter list of the DOE providers and a longer list of independent providers.

On the shorter DOE provider lists, the Public Advocate's Office called all 27 speech therapists identified as providing services in the Bronx and 51 of the occupational therapists identified as providing services in the Bronx.  Additionally, the Public Advocate's Office called a random sample of 51 citywide speech therapists and 45 citywide occupational therapists from these lists.  Of the 27 speech therapists listed as providing services in the Bronx, only two had any availability; both were willing to travel to the Bronx.  Of the 51 occupational therapists listed as providing services in the Bronx, only two had any availability; both were willing to travel to the Bronx. Of the 96 calls placed to DOE providers of speech therapy and occupational therapy who were not affirmatively listed as providing services in the Bronx, only two were available and willing to travel to the Bronx.

With the longer lists of independent providers, the results were even more dismal. The Public Advocate's Office called a random sample of 50 speech therapists and 50 occupational therapists listed as providing services in the Bronx.  None of these providers were willing to travel to the Bronx to provide services.

---

[3] Name changed to protect the identity of the provider.

New York City Schools Are Failing to Provide Mandated Supports to Children with Disabilities

**Calls to Speech Therapy Providers**





**Calls to Occupational Therapy Providers**





The Public Advocate's Office obtained internal DOE data from the 2015-2016 school year that shows that RSAs go unused at an alarming rate across its 32 school districts. In Districts 8, 9, 10, and 11 RSAs went unused at high rates: 91%, 63%, 71%, and 66%, respectively. Of the 129 RSAs that the DOE issued in District 8, only 12 resulted in children receiving the services that they are legally entitled to. Of the 365 RSAs that the DOE issued in District 9, 229 went unused. Of the 523 RSAs that the DOE issued in District 10, barely a quarter resulted in children receiving their legally-mandated related services. Of the 448 RSAs that the DOE issued in District 11, only one third were used.

These districts in the Bronx are among the poorest in the City.  They have high rates of students living in homeless shelters and high rates of chronic absenteeism and midyear transfers.   For example, District 8 has 3,747 homeless students – 12% of the student body – and District 9 has 6,899 students who are homeless – 18%



OFFICE OF THE NEW YORK CITY PUBLIC ADVOCATE **LETITIA JAMES**

of the student body.[xvi] Together, these four districts are host to 124 shelters housing 22,735 homeless school age children.[xviii] These districts already bear a disproportionate burden – RSAs are one more obstacle to educational achievement for some of NYC's most vulnerable students.

The data indicating that parents in the Bronx face obstacles to using RSAs is corroborated by the experiences of parents with whom investigators from the Public Advocate's Office spoke.  For example, Miriam[4]  lives in the Bronx with her two sons.  Her older son is 14 years old and has autism and has a speech impairment.  About three years ago, she realized that he was not receiving the occupational therapy listed on his IEP.  The school responded by removing the occupational therapy from his IEP.  Miriam requested that her son be placed in a 12:1:1 classroom setting (a classroom with 12 students, one teacher, and one paraprofessional). Because of delays in getting the appropriate placement, Miriam's son fell behind academically.  Miriam requested Special Education Support Services (SETSS) – and after a significant delay, she was given an RSA. After seven months, she found a provider that was willing to come to the Bronx, but would not come to her house. She asked the school if it could provide a space, but the school refused. A full year after the school issued the RSA, she found another provider who now comes to her house on the weekends.

---

[4]  Named changed to protect identify of the child and family.

## Demographics: Bronx School Districts 8, 9, 10 and 11



Source: New York City Department of Education

## District 8 Hunts Point and Throgs Neck

This is the southeast corner of the Bronx, where there are striking economic disparities. The neighborhood of Hunts Point has high levels of poverty, in contrast to Throgs Neck, which is much more affluent. One-third of the students qualify for free or reduced lunch in the district overall.[5] But at some schools, like P.S. 100 Isaac Clason and P.S. 93 Albert G. Oliver, all students qualify for free lunch. There are also racial disparities: P.S. 14 Senator John Calandra School is more than one-quarter White, and P.S. 304 The Early Childhood School is nearly one-third White. Conversely, P.S. 69 Journey Prep School is 98 percent non-White.

In District 8, one out of six students experienced homelessness in the last five years.

## District 9 Morrisania

Poverty looms large over this Southwest Bronx district; more than 80 percent of students in this district qualify for free or reduced lunch. The student population is primarily Black and Latino. The district also has a higher-than-average number of students with disabilities. At some schools, more than 30 percent of students are in

[5] The percentage of students who qualify for free or reduced lunch is typically used as a proxy for poverty among students at a particular school.

14



OFFICE OF THE NEW YORK CITY PUBLIC ADVOCATE **LETITIA JAMES**

special education programs.

In District 9, one out of four students experienced homelessness in the last five years.

## District 10 Fordham and Riverdale

The Northeast Bronx includes neighborhoods where residents are economically well-off and where residents live in poverty. The neighborhoods of Tremont and Belmont, which have high poverty rates, are adjacent to wealthy neighborhoods like Riverdale. The contrast is borne out in the district's schools.  At P.S. 24 Spuyten Duyvil only one quarter of students qualify for free or reduced lunch and 30% of students are White. In contrast, the rest of the school district is predominantly students of color.  At P.S. 9 Ryer Avenue Elementary School, all students qualify for free and reduced price lunch.[xviii]

In District 10, one out of five students experienced homelessness in the last five years.

## District 11 Parkchester and Pelham Bay

This school district in the Bronx borders Westchester County. The district has large Black, Asian, and Latino student populations.  Some schools reflect that diversity. P.S. 106 Parkchester, for example, has a student body split evenly among Black, Asian, and Latino students. Many schools have 100% of their students qualifying for free and reduced lunch.

In District 11, one out of seven students experienced homelessness in the last five years.

## Conclusion

The Department of Education is relying upon vouchers – Related Service Authorizations – to provide critical services to students with disabilities.  The DOE's practice of using these vouchers means that many children go without crucial services because their parents are unable to find providers who will provide services in the community.

By providing RSAs to parents of students with disabilities, the DOE has abdicated its duty to deliver mandated related services. DOE policy - outsourcing its legal responsibility to contracted providers -- does not constitute equal access to education.  This problem affects the whole city but is particularly acute in districts in the Bronx, where a combination of poverty and geographic distance operates to render these vouchers effectively useless.

## ACKNOWLEDGMENTS

Writing and research for this policy report was led by Barbara Sherman, Deputy Policy Director with investigative work by Francisca Montaña, Consumer Protection Specialist and Akram Hasanov, Investigator and Research Specialist; additional support was provided by Molly Thomas-Jensen, Deputy Council; Anna Brower, Communications Director; Jarret Hova, Counsel for Strategic Initiatives; Jennifer Levy, General Counsel – Litigation; Fawzia Syed, Legal Intern; Kimberly Anderson, Legal Intern; and Michelle Kim, Policy Associate



OFFICE OF THE NEW YORK CITY PUBLIC ADVOCATE **LETITIA JAMES**

## Appendix A

## Total Number of RSA in School Districts

| School District | Total # RSA | % RSA Not Used | % IEP Students | % English Language Learners | % Poverty | % of Homeless Students* |
|---|---|---|---|---|---|---|
| 8 | 129 | 91% | 24% | 12% | 89% | 12% |
| 27 | 231 | 79% | 17% | 9% | 80% | 4% |
| 20 | 353 | 78% | 14% | 23% | 79% | 5% |
| 28 | 131 | 76% | 17% | 9% | 71% | 4% |
| 22 | 135 | 75% | 16% | 10% | 71% | 6% |
| 26 | 70 | 74% | 18% | 6% | 56% | 2% |
| 29 | 153 | 73% | 16% | 7% | 78% | 7% |
| 18 | 113 | 73% | 17% | 4% | 79% | 7% |
| 10 | 523 | 71% | 20% | 19% | 86% | 15% |
| 11 | 448 | 66% | 23% | 9% | 85% | 8% |
| 13 | 280 | 66% | 17% | 4% | 67% | 6% |
| 21 | 173 | 65% | 19% | 15% | 78% | 4% |
| 25 | 295 | 63% | 14% | 17% | 70% | 3% |
| 9 | 365 | 63% | 20% | 22% | 92% | 18% |
| 17 | 258 | 62% | 16% | 9% | 83% | 11% |
| 1 | 76 | 62% | 22% | 9% | 69% | 11% |
| 2 | 279 | 59% | 17% | 8% | 59% | 5% |
| 6 | 270 | 57% | 17% | 27% | 86% | 13% |
| 30 | 175 | 53% | 15% | 17% | 82% | 5% |
| 32 | 19 | 53% | 18% | 18% | 91% | 11% |
| 12 | 420 | 51% | 26% | 18% | 92% | 15% |
| 24 | 478 | 49% | 17% | 21% | 84% | 5% |
| 4 | 87 | 48% | 24% | 10% | 90% | 14% |
| 5 | 286 | 44% | 23% | 9% | 80% | 16% |
| 7 | 168 | 43% | 29% | 16% | 92% | 14% |
| 16 | 111 | 42% | 28% | 4% | 86% | 15% |
| 15 | 223 | 41% | 20% | 16% | 66% | 4% |
| 19 | 203 | 36% | 20% | 11% | 87% | 11% |
| 3 | 136 | 35% | 17% | 5% | 49% | 7% |
| 23 | 35 | 31% | 26% | 4% | 87% | 15% |
| 31 | 146 | 27% | 24% | 5% | 55% | 3% |
| 14 | 97 | 23% | 22% | 11% | 86% | 7% |

*The most recent data for % of Homeless Students is 2014-2015

New York City Schools Are Failing to Provide Mandated Supports to Children with Disabilities

## Appendix B

### Map of Percentage of RSA's Not Used by School District





OFFICE OF THE NEW YORK CITY PUBLIC ADVOCATE **LETITIA JAMES**

# ENDNOTES

i New York City Department of Education, "About Us," available at http://schools.nyc.gov/AboutUs/default.htm (last visited June16, 2017).

ii New York Citywide Council on Special Education: 2015-2016 Annual Report, 4 (June 1, 2017).

iii 20 U.S.C. § 1401(26)(A).

iv New York City Department of Education, Family Guide to Special Education Services for School-Age Children: A Shared Path to Success, available at http://schools.nyc.gov/NR/rdonlyres/DBD4EB3A-6D3B-496D-8CB2-C742F9B9AB5C/0/Parent_Guide_for_Students_with_Disabilites_Updated_Web.pdf (last visited June 16, 2017).

v Advocates for Children, Tip Sheet #9: Getting Help For Struggling Students, available at http://www.advocatesforchildren.org/sites/default/files/library/getting_help_for_struggling_students.pdf?pt=1 (last visited June 16, 2017).

vi Philissa Cramer, "Departing from plan, Black slows down special ed changes," Chalkbeat (Jan. 25, 2011), available at http://www.chalkbeat.org/posts/ny/2011/01/25/departing-from-plan-black-slows-down-special-ed-changes/ (last visited June 16, 2017).

vii New York City Department of Education, Citywide Related Services Policy and Practice: Assignment of Related Service Providers, available at http://schools.nyc.gov/NR/rdonlyres/C4513261-2A46-40F8-86D6-999A9B94D88D/0/CitywideRelatedServicesContractingPolicyandPracticeFinalPostg020316.pdf (last visited June 16, 2017).

viii 34 C.F.R. § 300.323.

ix New York City Department of Education, Standard Operating Procedures Manual: The Referral, Evaluation, and Placement of School-Age Students with Disabilities (February 2009), available at http://schools.nyc.gov/NR/rdonlyres/5F3A5562-563C-4870-871F-BB9156EEE60B/0/03062009SOPM.pdf (last visited June 16, 2017).

x New York City Department of Education, SESIS Assessment Report, available at http://schools.nyc.gov/NR/rdonlyres/880CFEB4-AADE-4597-8D86-36D9C8E551E2/0/SESISReport.pdf (last accessed June 19, 2017).

xi 20 U.S.C. § 1412(9).

xii Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743 (2017); New York City Commission on Human Rights, "In Public Spaces," available at http://www1.nyc.gov/site/cchr/law/in-public-spaces.page (last visited June 16, 2017).

xiii 25 U.S.C. § 1412(a)(5).

xiv For an example of one of these lists, see New York City Department of Education, "Municipality List: Independent Providers of Related Services for School-Age Students With Disabilities – OCCUPATIONAL THERAPY," available at http://schools.nyc.gov/NR/rdonlyres/6675BEDA-BD13-46D5-A43C-3B50AC473165/0/IPlistOTApril2017.pdf (last visited June 16, 2017).

xv Institute for Children, Poverty & Homelessness, "On The Map: The Atlas of Student Homelessness in New York City 2016," available at http://www.icphusa.org/new_york_city/on-the-map-the-atlas-of-student-homelessness-in-new-york-city-2016/ (last visited June 16, 2017).

xvi Id.

xvii Id.



# THE PUBLIC ADVOCATE
## FOR THE CITY OF NEW YORK
## Letitia James



1 CENTRE STREET
15TH FLOOR
NEW YORK, NY 10007

WWW.PUBADVOCATE.NYC.GOV
(212) 669 - 7200

FACEBOOK.COM/PALETITIAJAMES

@OPA

July 2017