UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

C.B., et al.,

                    *Plaintiff,*

   -against-

                                       Case No. 18 Civ. 07337

NEW YORK CITY DEPARTMENT OF EDUCATION,

                    *Defendant.*


PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES


                                                    CUDDY LAW FIRM, P.L.L.C.
                                                    Jason H. Sterne, Esq., of counsel
                                                    *Attorney for Plaintiffs*
                                                    5693 South Street Road
                                                    Auburn, New York 13021
                                                     (315) 370-4020
                                                     jsterne@cuddylawfirm.com

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   I.   THE IDEA AND ITS FEE-SHIFTING PROVISION . . . . . . . . . . . . . 1

   II.  PLAINTIFFS PREVAILED AT THE ADMINISTRATIVE LEVEL . . . . . . . . 3

   III. PLAINTIFF OBTAINED VIRTUALLY ALL THE RELIEF SHE SOUGHT . . . . 3

   IV.  THE REQUESTED FEE IS REASONABLE . . . . . . . . . . . . . . . . 4

       A.  Plaintiff's Counsels' Hourly Rates Are Reasonable . . . . . . . . . . 4

       B.  The Hours Expended By Counsel Are Reasonable . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PRELIMINARY STATEMENT

This is an application for attorneys' fees following an administrative hearing conducted pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Plaintiff now moves the Court for summary judgment awarding reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3).

ARGUMENT

I.   THE IDEA AND ITS FEE-SHIFTING PROVISION

The Individuals with Disabilities Education Act (IDEA) is part of "an ambitious federal effort to promote the education of handicapped children." *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 122 (2nd Cir. 1998) quoting *Board of Educ. v. Rowley,* 458 U.S. 176, 179 (1982). Under the IDEA, Congress "offers federal funds to states that demonstrate, inter alia, that they have developed plans to assure all children with disabilities residing in the state a free appropriate public education." *Mackey v. Board of Educ.,* 386 F.3d 158, 159-60 (2nd Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)). The statute "expresses a strong preference" for disabled children "to be educated, to the maximum extent appropriate, together with their non-disabled peers" and, accordingly, requires special education and related services "[to] be provided in the least restrictive setting consistent with a child's needs." *Walczak, supra,* 142 F.3d at 122.

The IDEA's education delivery system begins with the "individualized education program," or IEP. *Murphy v. Arlington Cent. Sch. Dist. Board of Educ.,* 297 F.3d 195, 197 (2nd Cir. 2002); *Honig v. Doe,* 484 U.S. 305, 311 (1988); see 20 U.S.C. § 1414(d). The IEP, which results from a collaboration between parents, educators, and district representatives, describes the child's present educational performance, establishes annual goals and short-term objectives for improvements in that performance, and dictates the specially designed instruction and services to enable the child to meet those objectives. *Murphy, supra; Honig, supra.*

IDEA provides a variety of procedural safeguards regarding the provision of free appropriate

1

public education by school districts. *Mackey, supra,* 386 F.3d at 160; see also *Walczak, supra,* 142 F.3d at 122–23 (describing procedural safeguards). Although "the responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers," their rulings are subject to independent judicial review. *Walczak, supra,* 142 F.3d at 129; See 20 U.S.C. § 1415(i)(2)(A) (right to civil action in review).

Finally, the IDEA includes a fee-shifting provision, which allows prevailing parents to recover attorneys' fees from school districts. See, e.g., *Schaffer v. Weast,* 546 U.S. 49 (2005) ("Prevailing parents may also recover attorney's fees."); 20 U.S.C. § 1415(i)(3)(B). This action was brought by the prevailing parents to recover attorneys' fees and costs accumulated during the prosecution of this matter in the state administrative proceedings and the state courts.

A party "prevails" for purposes of federal fee-shifting statutes when he obtains "actual relief on the merits" of a claim that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111–112 (1992). The prevailing party inquiry "does not turn on the magnitude of relief obtained," but the *size* of the fee award does. *Farrar,* 506 U.S. at 114. The Supreme Court has said that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Therefore, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the *size* of a reasonable fee, not to *eligibility* for a fee award at all." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 790 (1989) (emphasis added). And "[e]ven if the results obtained do not justify awarding fees for all the hours spent on a particular case, no fee is reasonable unless it would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand." *Hensley, supra,* at 449.

To obtain prevailing party status, a plaintiff must secure relief that alters the legal relationship between the parties and modifies the defendant's behavior in a way that directly benefits the plaintiff. See, e.g., *Farrar v. Hobby,* 506 U.S. 103 (1992). Here, the plaintiff obtained an order from the impartial hearing officer (IHO), which was not appealed. Sterne Decl., ¶¶ 33-34; Sterne Ex. C

2

(order).

## II.   PLAINTIFFS PREVAILED AT THE ADMINISTRATIVE LEVEL

Unquestionably, the plaintiff prevailed in the administrative proceedings. Defendant does not dispute that plaintiff obtained relief sought in the due process complaint. Doc. 13 (Answer) at ¶ 16 ("affirmatively states that the IHO awarded some, but n ot all, of the relief requested by Plaintiff ").

## III.   PLAINTIFF OBTAINED VIRTUALLY ALL THE RELIEF SHE SOUGHT

As noted above, the Supreme Court has said that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Therefore, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the *size* of a reasonable fee, not to *eligibility* for a fee award at all." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 790 (1989) (emphasis added).

The parent's closing brief requested

1. A finding that the Department denied C. a free appropriate public education for the 206/17 year;

2. An order directing the provision of 10 weekly hours of ABA services athome;

3. An order directing individual speech/language services three times weekly for 30 minutes outside of school;

4. An order directing physical therapy three times weekly on an individual basis at home;

5. An order directing occupational therapy two times weekly for 30 minutes on an individual basis at home;

6. Additional services, namely 40 hours of ABA services for services not provided between the start of the school year and the date of the hearing request;

7. An order directing play therapy be incorporated into C.'s service plan;

8. Such further relief as the IHO deems just, proper and appropriate.

Salisbury Decl., Ex. D at 29. The IHO's decision ordered:

1. The Student shall receive 10 hours of home-based ABA services per week.

2. The Student shall receive 40 hours of compensatory ABA services for services not received from June 2016 to August 24, 2016.

3. The Student shall receive three 30-minute sessions of individual speech/language therapy per week outside school.

4. The Student shall three 30-minute sessions of individual physical therapy in the home.

5. The Student shall receive two 30-minutes sessions of individual occupational therapy in the home.

6. The CSE shall reconvene to discuss and implement goals to address the Student?s social skills through play therapy or other modalities.

Salisbury Decl., Ex. C at 12. In light of this success, no reduction of the fee award due to less than optimal results is warranted.

IV. THE REQUESTED FEE IS REASONABLE

Courts have traditionally presumed that a fee calculated via the "lodestar method," namely multiplying the number of hours expended by a reasonable hourly rate, is a reasonable fee. *Hensley v. Eckerhart,* 461 U.S. 424 (1983); *Marisol A. ex rel. Forbes v. Giuliani,* 111 F.Supp.2d 381 (S.D.N.Y. 2000). There is a strong presumption that the lodestar amount is reasonable. See, e.g., *Harris v. Marhoefer,* 24 F.3d 16, 18 (9th Cir. 1994); and see *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir. 1988) ("Only in rare instances should the lodestar figure be adjusted on the basis of other considerations"). The Second Circuit has adopted the term "presumptively reasonable fee" as a replacement for "lodestar." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 183 (2nd Cir. 2008). Plaintiff seeks recovery on that basis.

A. Plaintiff's Counsels' Hourly Rates Are Reasonable

In determining whether a requested hourly rate is reasonable, courts look to the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Gierlinger v. Gleason,* 160 F.3d 858 (2nd Cir. 1998); *A.R. v. N.Y.C. Dept.*

4

*of Ed.,* 407 F.3d 65 (2nd Cir. 2005). The Second Circuit has directed that district courts employ "current rather than historic hourly rates" in calculating the lodestar amount. *Farbotko v. Clinton County of New York,* 433 F.3d 204 (2nd Cir. 2005). Furthermore, the Second Circuit has emphasized that hourly rates are not determined by judicial precedent but by a survey of affidavits demonstrating community rate. *Id.* Of course, the most important legal skills are transferable, so an attorney's overall experience, rather than only his experience in education law, should be taken into account. *A.R., supra.*

"Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." *Abdell v. City of New York,* 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (collecting cases); see also *Siegel v. Bloomberg L.P.,* 2016 WL 1211849, at *6 (S.D.N.Y. Mar. 22, 2016) (collecting cases and noting prevailing rates of $285 to $350 for associates with more than eight years' experience, $200 to $275 for associates with at least four years' experience, and rates of $450 and above for highly experienced counsel). *Makinen v. City of New York,* 2016 WL 1451543, at *3 (S.D.N.Y. Apr. 12, 2016) (collecting cases).

The hourly rate awarded in fee recovery litigation must be adequate to attract practitioners to the field. *Green v. Torres,* 361 F.3d 96, 100 (2d Cir. 2004) (general purpose of fee-shifting statutes is to permit plaintiffs with valid claims to attract effective legal representation and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole). The declaration of Elisa Hyman highlights the importance of ensuring attractive hourly rates for attorneys representing indigent parents during the special education hearing process. Hyman Decl. This is particularly important in light of the Public Advocate's findings, that thousands of students with special needs are being deprived of mandated services in the City of New York. Cuddy Ex. E.

Plaintiff seeks an hourly rate of $475 for attorneys Sterne, A. Cuddy, Aasen and Salisbury, of $275 for Kenneth Bush, and of $150 for the paralegals. Plaintiffs have submitted the declarations of Elisa Hyman, Rachel Asher, Paul Barger, and Patricia Phelan, to establish that $475 is well within the community rate for senior attorneys practicing special education law in the New York

5

City area. Ms. Hyman is a 1991 graduate; she charged $600 per hour during the 2016/17 school year. Hyman Decl., ¶¶ 7, 37. Rachel Asher, a 1989 graduate, and Julie Gaughran, a 1995 bar admission, charge $475 per hour. Asher Decl., ¶¶ 3, 11, 14.

In *C.D. v. Minisink Valley Cent. Sch. Dist.,* 2018 WL 3769972 (S.D.N.Y. Aug. 9, 2018), this Court awarded $400 to attorneys Cuddy and Sterne, $300 to mid-level associate Jacqueline Walsh, and and $125 to paralegals Aughtmon and Woodard.[1] Judge Engelmayer described attorneys Sterne and Cuddy as "lawyers who have deep expertise in IDEA litigation[.]" *Id.*, at *7.

In *P.R. v. New York City Dep't of Educ.,* 2018 WL 4301366 (S.D.N.Y. Sept. 10, 2018) adopting report and recommendation 2018 WL 4328012 (S.D.N.Y. July 19, 2018), Judge Swain awarded $400 per hour to Gina DeCrescenzo and $300 per hour to attorneys Grace Duffin and Benjamin Brown, and $140 to a paralegal. *Id.*, at *11. According to the decision, "Duffin graduated from the Catholic University of America, Columbus School of Law, in 2015, and started working for DeCrescenzo's firm in 2016." *Id.*, at *2. Brown began working for DeCrescenzo's firm in June 2017. *Id.*, at *3.[2]

The Department will most likely rely upon an unreported district court case from 2013. *K.L. v. Warwick Valley Cent. Sch. Dist.,* 2013 WL 4766339 (S.D.N.Y. Sept. 5, 2013), aff'd, 584 F. App'x 17 (2d Cir. 2014) (summary order). *K.L.,* however, is inapplicable to the facts at bar. As the Second Circuit noted, that case "involved few disputed issues and a prompt settlement prior to any administrative proceedings, [so] the district court deemed an hourly rate of $250 appropriate. Because we have instructed district courts to consider the *Johnson* factors, including 'the time

---

[1] In *M.D. v. New York City Dep't of Educ.,* 2018 WL 4386086 (S.D.N.Y. Sept. 14, 2018) and *M.D. v. New York City Dep't of Educ.,* 2018 WL 4853032 (S.D.N.Y. Oct. 5, 2018), Judge Furman awarded the Cuddy Firm $360 per hour for senior attorneys, $280 for mid-level associates, and $120 for paralegals.

[2] In *O.R. v. New York City Dep't of Educ.,* 340 F. Supp. 3d 357, (S.D.N.Y. 2018), Judge Gorenstein awarded $350 to DeCrescenzo, $300 to an attorney with four year's experience in education law, and $225 to Brown, noting that Brown had just one year's experience in special education law. Likewise, the Court in *B.B. v. New York City Dep't of Educ.,* 2018 WL 1229732 (S.D.N.Y. Mar. 8, 2018) awarded DeCrescenzo $350 per hour, noting that "the underlying administrative action involved relatively minimal effort, and involved a brief, uncontested hearing resulting in limited success beyond that conceded by the Defendant." *Id.*, at *2.

and labor required,' 'the novelty and difficulty of the questions,' and 'the level of skill required to perform the legal service properly,' in setting the reasonable hourly rate, see *Arbor Hill,* 522 F.3d at 186 n. 3, 190, we cannot conclude that the district court abused its discretion in setting the hourly rate here." *K.L. v. Warwick Valley Cent. Sch. Dist.,* 584 F. App'x 17, 19 (2d Cir. 2014) (summary order). In that case, no hearing was held, as the matter resolved with a consent decree.

Judge Furman, in fact, discussed the inapplicability of *K.L.* in recent case. *M.D. v. New York City Dep't of Educ.,* 2018 WL 4386086, at *4 (S.D.N.Y. Sept. 14, 2018). That decision noted that "in *K.L.,* the parties had reached an 'early settlement,' 2013 WL 4766339 at *8, which was then 'so ordered' by the impartial hearing officer two days later, *id.* at *3. Even if the DOE were correct that Plaintiffs faced 'zero opposition from the DOE before and at the impartial hearing[s]' in this case (DOE Mem. 1-2), that would still stand in stark contrast to the pre-hearing settlement in *K.L.*" 2018 WL 4386086, at *4.

Defendant's will most likely cite *M.D.* for the hourly rates awarded by Judge Furman. In that case, however, defendant argued that the two cases at issue were "entirely indefensible for the DOE[,]" and that the Cuddy attorneys faced "zero opposition from the DOE before and at the impartial hearing[s.]" 2018 WL 4386086, at *4. Judge Furman noted that "there was all the more reason for DOE to settle, rather than litigate, claims they could not meaningfully defend." *Id.* In contrast, the Department called witnesses contesting the plaintiff's case during the administrative hearing. Salisbury Decl., ¶¶ 15–30.

Defendant will also likely rely upon two recent decisions involving the law firm of Gina DeCrescenzo, P.C. *B.B. v. New York City Dep't of Educ.,* 2018 WL 1229732 (S.D.N.Y. Mar. 8, 2018); *O.R. v. New York City Dep't of Educ.,* 340 F. Supp. 3d 357, 361 (S.D.N.Y. 2018). In *B.B.,* the DeCrescenzo firm was found to have engaged in "excessive billing[,]" as "Ms. DeCrescenzo billed considerable time preparing for and attending a hearing that lasted only a few minutes and that generated limited relief beyond what the parties had already agreed to[.]" 2018 WL 1229732, at *2. *B.B.* is the same type of "routine matter" as *K.L.,* where the school district did not seriously oppose the relief sought; it resulted in an hourly rate for Ms. DeCrescenzo of $350. According to the magistrate judge in *B.B.,* at that time Ms. Decrescenzo had "over seven years of experience in

7

the field of special education[.]" *B.B. v. New York City Dep't of Educ.,* 2018 WL 3300700, at *2 (S.D.N.Y. Jan. 29, 2018), report and recommendation adopted in part, rejected in part, 2018 WL 1229732 (S.D.N.Y. Mar. 8, 2018). In *O.R.,* the court considered the rates set in both *B.B.,* and in another recent DeCrescenzo decision, *P.R. v. New York City Dep't of Educ.,* 2018 WL 4301366 (S.D.N.Y. Sept. 10, 2018), which awarded DeCrescenzo $400 per hour. *O.R. v. New York City Dep't of Educ.,* 340 F. Supp. 3d 357, 365 (S.D.N.Y. 2018).

Importantly, Ms. DeCrescenzo's "over seven years of experience in special education law" is significantly less than the experience of principal counsel in this matter, Lance Salisbury. Salisbury Decl., ¶¶ 4–14. Similarly, her associate Benjamin Brown began working in special education law in June 2017, so was considerably less experience in the field as of the three decisions noted above that Kenneth L. Bush was at the time he initiated this action. Brown was awarded $200 (*B.B.*),. $225 (*O.R.*), and $300 (*P.R.*).

Jason H. Sterne is a 1996 SUNY/Buffalo law school graduate. Sterne Decl., ¶ 35. He has been practicing special education full-time since 2005. *Id.*, ¶ 42. His declaration lists about fifty reported special education appellate decisions at the state review level, and over thirty reported federal decisions relating to special education law, including two significant recent Second Circuit decisions, *A.M. v. N.Y. City Dep't of Educ.,* 845 F.3d 523, 339 Ed. Law Rep. 22 (2nd Cir. 2017) and *L.O. v. New York City Dep't of Educ.,* 822 F.3d 95, 331 Ed. Law Rep. 609 (2nd Cir. 2016). *Id.*, ¶¶ 37–39. Andrew Cuddy is a 1996 SUNY/Buffalo graduate who has been practicing special education law since 2001. Cuddy Decl., ¶¶ 63, 67.

Lance Salisbury was lead counsel during the administrative hearing. He is a 1996 graduate who has been in private practice since 2001. Since 2016, he has been the Supervising Attorney for the Tompkins and Schuyler County Assigned Counsel Programs; he has also been counsel to the Cuddy firm since 2014. Since 2001 he has practiced criminal law and education law, including special education law. Salisbury Decl., ¶¶ 4–14.

These three attorneys all have more experience in special education law than DeCrescenzo, who, as of January 2018, had "over seven years of experience in the field of special education." *B.B. v. New York City Dep't of Educ.,* 2018 WL 3300700, at *2 (S.D.N.Y. Jan. 29, 2018), report

8

and recommendation adopted in part, rejected in part, 2018 WL 1229732 (S.D.N.Y. Mar. 8, 2018). Thus, if DeCrescenzo commands up to $400, attorneys Sterne, Cuddy and Rothenberg should command a higher rate. *P.R. v. New York City Dep't of Educ.,* 2018 WL 4301366 (S.D.N.Y. Sept. 10, 2018) adopting report and recommendation 2018 WL 4328012 (S.D.N.Y. July 19, 2018). Thus, a rate of $475 per hour is appropriate.

Similarly, Kenneth Bush's experience in special education law compares favorably to that of Benjamin Brown, who has been awarded rates on $200, $225 and $300 per hour in the last year. See *P.R., O.R., B.B.* Brown's "lack of experience in IDEA law" contrasts with Bush's 49 cases litigated, including 34 to a substantive decision. *O.R., supra,* 340 F. Supp. 3d at 366; Bush Decl., ¶ 9. Thus, a rate of $275 per hour is appropriate for Mr. Bush.

The declaration of Adrienne Arkontaky establishes that clients do pay the Firm's charged hourly rates in special education matters. Her declaration, and the attached exhibits, show that clients have willingly paid rates as high as $550 for the Firm's services in such matters. Arkontaky Decl., ¶¶ 12 to 20. As such, the Court should award the requested rates.

B.   *The Hours Expended By Counsel Are Reasonable*

The reasonableness of hours spent is a fact-specific determination, made on a case-by-case basis. *Hensley, supra,* at 429. The Supreme Court has established guidelines to aid in determining reasonableness, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases. *Id.,* at 430, n. 3. A district court should avoid countenancing criticisms of fee claims that amount to "nit-picking." *Goldring v. District of Columbia,* 2005 WL 3294005 (D.D.C. 2005).

Although it is within a district court's discretion to compensate travel time at the full hourly rate,

9

courts in the Second Circuit often reduce attorneys' fees for travel time by fifty percent. *Makinen v. City of New York,* 2016 WL 1451543, at *3 (S.D.N.Y. Apr. 12, 2016). In *Makinen,* "Plaintiffs were represented by a firm located in Albany. Defendants argue that it was unreasonable for Plaintiffs to retain Albany-based counsel and that counsel should not receive any compensation for the time spent traveling from Albany to New York City." *Id.*, at *3. The court found that "the rates requested by counsel are in line with the rates charged by counsel with similar experience in the Southern District" but that "a reasonable, paying client may have agreed to compensate for travel time, albeit at a lower rate, because counsel purports to have worked on the case during travel." *Id.*, at *4. The court thus awarded 50% of the hourly rate for travel.

Judge Engelmayer, however, found that, for trips between Auburn and the Southern District, "the properly reimbursable travel time here is one hour in each direction. This gives due deference to a parent's desire to hire expert IDEA counsel (it is not clear from the record what the range was of qualified IDEA counsel based near Slate Hill, New York) and to the inevitability of some travel time to the site of the hearing[.]" *C.D., supra,* 2018 WL 3769972, at *10. Judge Furman has followed this rule with respect to travel between Auburn and Brooklyn. *M.D., supra,* 2018 WL 4386086, at *5 ("only one hour of the trip between Plaintiffs' counsel's offices in Auburn, New York, to the proceedings in this district is reasonably compensable, and will reduce the compensable hours for the two such trips taken in the R.L. case (see Cuddy Decl. Ex. A at 11–12) to one hour in each direction.") Here, Mr. Salisbury made six trips between Ithaca and Brooklyn; the Court should award one hour at half rate, per trip. Cuddy Ex. A.

In contrast to cases where a firm employs a standardized complaint and simply changes the names, in IDEA cases a hearing request is largely drafted from scratch. Compare *Portillo v. New Ko-Sushi Japanese Restaurant, Inc.,* 2017 WL 3995602 (S.D.N.Y. September 8, 2017) ("Based on the Court's experience in these kinds of cases generally and with Mr. Faillace's firm specifically (including review of more than one complaint drafted by Mr. Faillace in which the names of other parties were erroneously included, presumably as a result of an imperfect cut-and-paste job), the Court finds it hard to believe that Mr. Faillace began from scratch when drafting the standardized complaint in this case.") Notably, in IDEA cases the IHO lacks subject matter jurisdiction over

10

issues not explicitly raised in the due process complaint. *B.M. v. New York City Dep't of Educ.*, 569 F. App'x 57, 59 (2d Cir. 2014). Thus, it is critical that an attorney identify all viable claims and raise them in some detail in the DPC. The time spent by Mr. Salisbury in reviewing educational records and drafting a detailed hearing request is far from excessive; likewise, the time necessary to prepare for seven separate appearances before the IHO was not excessive. See Ex. A to Cuddy Decl.; Ex. A to Salisbury Decl.

Finally, counsel billed $5,710.00 for the attorney time (Bush 2.3, Cuddy 6.2, Sterne 8.7) in the fee recovery portion of this matter, which includes efforts to settle without litigation, initiating this action, making additional efforts to settle, and preparation of these motion papers. *M.D. v. New York City Dep't of Educ.,* 2018 WL 4853032 (S.D.N.Y. Oct. 5, 2018) (awarded 116 hours for fees on fees).

The Court should award fees in the following amounts:

| Attorney | Type | Rate | Hours | Amount |
| --- | --- | --- | --- | --- |
| Lance Salisbury | Hearing | $475.00 | 112.9 | $53,627.50 |
| Andrew Cuddy | Hearing | $475.00 | 1.9 | $902.50 |
| Lance Salisbury | Travel (Adjusted as Per *C.D.*) | $237.50 | 6.0 | $1,425.00 |
| Paralegals | Hearing | $150.00 | 26.1 | $3,915.00 |
| Kenneth Bush | Fee/Federal | $275.00 | 2.3 | $632.50 |
| Andrew Cuddy | Fee/Federal | $475.00 | 6.2 | $2,945.00 |
| Jason Sterne | Fee/Federal | $475.00 | 8.7 | $4,132.50 |
| Paralegals | Fee/Federal | $150.00 | 0.7 | $105.00 |
| Expenses (Adjusted as Per *C.D.*) | Hearing | | | $779.67 |
| Total | | | | $68,464.70 |

11

## CONCLUSION

Based on the foregoing, the Court should grant attorneys' fees and costs in favor of the plaintiff and such further relief as the Court deems just and proper.

Dated: Auburn, New York
April 1, 2019

                                      Respectfully submitted,

                                      /s/ Jason H. Sterne

CUDDY LAW FIRM, P.L.L.C.
Jason H. Sterne, Esq., of counsel
*Attorney for Plaintiffs*
5693 South Street Road
Auburn, New York 13021
(315) 370-4020
jsterne@cuddylawfirm.com